IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN O. FINZER, JR. and )
ELIZABETH M. FINZER, )
 )
 )
 Plaintiffs, )
 )
 vs. ) Case No. 06 C 2176
 )
UNITED STATES[1], )
 )
 )
 Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John and Elizabeth Finzer bring this action to obtain a refund that the Internal Revenue Service (IRS) disallowed for amounts they claimed as medical expenses on their amended 2002 federal income tax return. The United States has moved for summary judgment. For the following reasons, the Court denies defendant's motion.

### Facts

Because the defendant has moved for summary judgment, the Court views the facts in the light most favorable to the plaintiffs and draws reasonable inferences in their favor. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987).

---

[1] Plaintiffs brought this action against the United States Department of the Treasury, which is not a proper party to suit. *See Pesci v. Internal Revenue Service*, 67 F. Supp. 2d 1189, 1195 (D. Nev. 1999). As the defendant requests, the Court will substitute the United States for the United States Department of the Treasury. 26 U.S.C. § 7422(f) (suit arising out of dispute over taxes owed may only be maintained against United States).

In 2002, John and Elizabeth Finzer entered into a residency agreement with Classic Residence by Hyatt, a lifetime care facility located in Glenview, Illinois (Hyatt). Hyatt is a retirement community licensed under the Illinois Life Care Facilities Act (210 ILCS 40/1-12) that provides life care services to individuals aged sixty-two years and older. Under the agreement, the Finzers receive residential accommodations and assisted living and skilled nursing services if needed. The agreement will remain in effect for the rest of their lives unless terminated by the Finzers upon sixty days notice, or by Hyatt for one of the causes enumerated in the agreement. In exchange for the services provided by Hyatt, the Finzers paid an entrance fee of $726,300. They are also required to make monthly payments for as long as they live at Hyatt. The monthly payments, currently $4,665, may be increased or decreased by Hyatt upon sixty days written notice.

The Finzers' agreement specifies the services included in the monthly fee, among which is "a long-term care program providing assisted living, memory support and skilled nursing care . . . ." Def. R. 56.1 Stat., Ex. 1 at 5. The agreement does not, however, delineate specifically how the entrance fee and monthly fees are allocated among the various services provided by Hyatt. The Illinois Life Care Facilities Act, however, defines "entrance fee" as "an initial or deferred transfer to a provider of a sum of money or property, made or promised to be made by a person entering into a life care contract, which assures a resident of services pursuant to a life care contract." 210 ILCS 40/2(g). The Act defines a "life care contract" as

> a contract to provide to a person for the duration of such person's life or for a term in excess of one year, nursing services, medical services or personal care services, in addition to maintenance services for such person in a facility, conditioned upon the transfer of an entrance fee to the provider of such services in addition to or in lieu of the payment of regular periodic charges for the care and services involved.

*Id.* § 2(c).

In February 2003, Hyatt sent the Finzers a letter regarding the potential tax deductibility of their entrance fee. Hyatt stated that 18.9% of the entrance fee may qualify for deduction as a medical expense. The Finzers thereafter filed their 2002 tax return, claiming $146,339 in medical expenses, of which $136,798 relate to the entrance fee.[2] Pursuant to the Internal Revenue Code, medical deductions are capped at 7.5% of a taxpayer's adjusted gross income. Accordingly, the Finzers claimed a medical deduction of $92,420.

Sometime after the Finzers filed their 2002 return, Hyatt sent them another letter regarding the potential deductibility of their entrance fee. Hyatt told the Finzers that for the 2003 tax year, it calculated the percentage of the monthly fees and entrance fees related to medical costs based on actuarial information and statistics. In previous years (including 2002), it had based the calculations on historical operating costs. Hyatt stated that if it had used the 2003 actuarial methodology in 2002, 41% of the entrance fee could have been claimed as a medical deduction instead of 18.9%. Based on this information, the Finzers filed an amended 2002 return that increased their total itemized deductions by $159,960. The Finzers sought a $43,178 refund, which the IRS denied. The Finzers then filed this suit.

## Discussion

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is

---

[2] The Finzer's calculations appear to be off slightly. An 18.9% allocation of the $726,300 entrance fee to medical expenses would be $137,271. The government does not address this discrepancy and, in any event, it is not relevant for purposes of the present motion.

3

appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In a tax refund case, the taxpayer bears the burden of proving that the IRS's assessment of taxes was erroneous and of showing the correct amount he is entitled to recover. *See United States v. Janis*, 428 U.S. 433, 440 (1976). In its motion for summary judgment, the government contends that no portion of the entrance fee is deductible as a medical expense. It supports this contention with several arguments. The government claims that there is no evidence that any portion of the entrance fee was paid for medical care. It claims that because the entrance fee can be partially refunded under certain circumstances, the taxpayers are precluded from characterizing a portion of the fee as a medical expense. The government also points to the provision of the residential agreement stating that the monthly fee includes medical care as evidence that the entrance fee must cover something different. Finally, the government points out that the residential agreement specifies that if a resident is unable to pay the monthly fee, those charges may be deferred and charged against any potential refund of the entrance fee to which the resident might otherwise be entitled. The government argues that because the entrance fee is available to reimburse Hyatt for any deferred monthly payments, it is inconsistent to treat any portion of that fee as a medical expense.

The IRS has issued several revenue rulings that address situations similar to the one at issue in this case and that support the deductibility of a portion of a fee similar to the one the Finzers paid. In 1975, the IRS ruled that a taxpayer who paid a lump-sum life-care fee to a retirement home may deduct as a medical expense that portion of the fee allocable to the

4

retirement home's obligation to provide medical care. Rev. Rul. 75-302, 1975-2 C.B. 86. The IRS made a similar ruling the following year. *See* Rev. Rul. 76-481, 1976-2 C.B. 82.

The government contends that the Finzers' case is distinguishable from these revenue rulings because "the life-care fee in those rulings was paid in consideration for the promise of lifetime care while in the instant case, no evidence has been presented to support the contention that some portion of the entrance fee was" allocated to medical care. Def. Mem. at 4. Not so. The lifetime care contract states that the "use of the accommodations in the Community *and the right to receive the services described in this Agreement* are contingent upon Your payment of" the entrance fee and the monthly fees. Def. Mem., Ex. 1 at 5-6 (emphasis added). This indicates that the entrance fee is partially allocable to medical care, as that is one of the "services described in [the] agreement." *Id.* at 1, 5, 8-10. The fact that the residency agreement specifies that the monthly fees also include medical services does not mean that the entrance fee does not.

The government's contention that there is no evidence that any portion of the entrance fee is allocable to the provision of medical care is also refuted by Hyatt's letters to the Finzers. Hyatt calculated that 18.9% of the fee was allocable to medical care based on historical operating costs, and 41% under an actuarial model. Def. Mem., Ex. 2, 4. In the 1975 revenue ruling cited earlier, the IRS rendered its decision based on the allocation made by the retirement home in addition to the language of the agreement. The government does not explain why the same type of information provided by the care provider should not be credited here.

The fact that the entrance fee can be refunded under certain circumstances and may be used to cover a portion of the monthly fees if the Finzers are unable to pay also does not affect whether a portion of the fee is allocable to medical care. The lifetime care agreement at issue in

5

the 1975 revenue ruling also provided that a portion of the fee could be refunded in certain circumstances. In holding that a portion of the fee could be deducted as a medical expense, the IRS found that any refund of the fee attributable to a prior year deduction would have to be included in the taxpayer's gross income in the year the refund was received. Based on this ruling, the fact that the Finzers may be eligible for a refund would not appear to affect whether a portion of the entrance fee is deductible in the 2002 tax year; rather, it indicates that they would have to declare the refund as income if and when they receive it. Similarly, the possibility that a portion of the fee may be used in the future to cover a shortfall in the Finzer's monthly payments would not appear to affect the deductibility of the fee in the 2002 tax year. That potential occurrence is analytically no different from the possible future receipt of a refund. In other words, though it may have future tax implications, it does not undermine the deductibility of a portion of the entrance fee as a medical expense. In sum, the government has not shown that, as a matter of law, no portion of the entrance fee is allocable to medical care.

The government also contends, in passing, that the Court should grant its motion for summary judgment because there is nothing in the record to justify why Hyatt changed its method for calculating the percentage of the entrance fee allocable to medical expenses. Def. Mem. at 5. Somewhat inconsistently, however, the government contends that "the issue in this case is not the method Plaintiffs used in calculating their medical expense deduction," but rather whether any portion of the entrance fee was paid for medical care. Def. Reply at 2.

In any event, the government does not develop an argument regarding Hyatt's change in methodology and the Finzer's subsequent reliance on the increased allocation in their amended return. The one case the government cites (without elaboration), *Baker v. Comm'r of Internal*

*Revenue*, 122 T.C. 143 (2004), does not hold that the actuarial method Hyatt used in 2003 to allocate 41% of the entrance fee to medical care is improper. In *Baker*, the IRS took the position that taxpayers needed to apply the actuarial method to determine the allocation of monthly fees attributable to medical care. *Id.* at 162. The taxpayers argued that the percentage method was acceptable. *Id.* The tax court held that there was "no requirement . . . that taxpayers engage in an actuarial analysis . . . to determine estimated lifetime medical care costs and total costs." *Id.* at 167. This holding is far from a finding that a taxpayer *cannot* rely on an actuarial analysis. Because the government has cited no other authority that suggests that the actuarial methods upon which the Finzers based their amended return is improper, it is not entitled to summary judgment on this basis.

## Conclusion

The Clerk is directed to substitute the United States of America as the named defendant in place of the United States Department of the Treasury. For the reasons stated above, the Court denies defendant's motion for summary judgment [docket no. 13]. This matter is set for status on March 19, 2007 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 7, 2007