UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN O. FINZER, JR. and ELIZABETH M. FINZER, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 06 C 2176 |
| v. | ) ) ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF THE TREASURY, | ) ) ) ) | Magistrate Judge Nolan |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOW COME the Plaintiffs, JOHN O. FINZER, JR. and ELIZABETH M. FINZER, by and through their attorneys, Pitler and Mandell, and submit the following trial brief.

## FACTS

The following facts have been established:

    1.    On July 28, 2002 the Plaintiffs entered into a Continuing Care Residency Agreement (the "Agreement") with C-C Lake which allowed the Plaintiffs to live at Classic Residence by Hyatt at the Glen ("Classic Residence"), a continuing care retirement community ("CCRC").

    2.    In addition to housing, Classic Residence offered several medical services listed in Section IV of the Agreement, including assisted living, memory support and skilled nursing services. Pursuant to Section IV of the Agreement,

1

Classic Residence also provided, on a contract consulting basis, a physician licensed to practice medicine to serve as a Medical Director of the Care Center.

3. The Agreement required payment of an entrance fee in the amount of $726,300.00 (the "Entrance Fee"), which the Plaintiffs paid in full.

4. Section III of the Agreement stated that the services offered within the Agreement, including implicitly the medical services listed in Section IV, were contingent upon payment of the Entrance Fee.

5. After paying the Entrance Fee and moving into Classic Residence, the Plaintiffs received a letter dated February 4, 2003 from Cary Maslow ("Maslow"), Executive Director of Classic Residence. This letter informed the Plaintiffs that "[t]he percentage of the non-refundable portion of your entrance fee that may qualify as a medical deduction is 18.9%." Classic Residence reached this figure by using a historical operating cost calculation method (the "percentage method").

6. On March 20, 2003, the Plaintiffs received another letter from Classic Residence informing them that IRS regulations would permit them to apply their medical deduction percentage to the entire Entrance Fee, rather than just the non-refundable portion of the Entrance Fee.

7. In reliance upon these letters, the Plaintiffs filed their Form 1040 tax return for the year 2002, including within Schedule A of that tax return a deduction in the amount of $136,198.00 as a medical expense associated with Classic Residence. The Plaintiffs reached this amount by applying the

suggested 18.9% figure to the Entrance Fee, and this deduction raised the Plaintiffs' total 2002 medical deductions on Schedule A to $146,339.00.

8. After filing their Form 1040 tax return, the Plaintiffs received another letter from Maslow informing them that Classic Residence was applying a new method to determine the percentage of its monthly fees and entrance fees that were deductible as medical costs. For 2003, Classic Residence determined this percentage by applying a method based upon actuarial information and statistics (the "actuarial method") rather than the percentage method.

9. Maslow's second letter further stated that, had the actuarial method been applied in 2002, forty-one (41%) percent of the Plaintiffs' Entrance Fee would have been deductible as a medical cost.

10. In reliance upon this second letter, the Plaintiffs filed a Form 1040X Amended Individual Income Tax Return, increasing their total medical deductions to $314,665.00. The increase of $159,960.00 was a reflection of the percentage increase noted in Maslow's second letter to the Plaintiffs.

11. The Plaintiffs' Form 1040X amended tax return specifically stated: "Taxpayers paid an entrance fee to the 'Classic Residence by Hyatt at the Glen', Glenview IL. Taxpayers were subsequently notified that a larger percentage of the fee was available for a medical deduction than originally deducted."

12. After amending their 2002 tax return, the Finzers sought a refund in the amount of $43,178.00.

13. On November 18, 2004, the Plaintiffs received a certified claim of disallowance from the Internal Revenue Service ("IRS") denying their amended tax deduction.

## DISCUSSION OF THE APPLICABLE LAW

**A PORTION OF THE PLAINTIFFS' ENTRANCE FEE FOR LONG-TERM CARE IS TAX-DEDUCTIBLE**

Although the Defendant contends that no portion of the Plaintiffs' Entrance Fee is tax-deductible, the Internal Revenue Code expressly allows tax deductions for expenses incurred for medical care, including lump-sum payments made to a CCRC. 28 U.S.C. § 213(d); Rev. Rul. 75-302, 1975-2 C.B. 86. Here, the Plaintiffs paid the Entrance Fee to Classic Residence, a CCRC offering several medical services including assisted living, memory support and skilled nursing services. Therefore, the Plaintiffs are entitled to the deduction listed in their 2002 Form 1040X amended tax return, and the Court should award the Plaintiffs the full tax deduction along with applicable interest.

The Defendant raises several groundless arguments against awarding the Plaintiffs their deduction. First, the Defendant argues that the Internal Revenue Code does not allow the Plaintiffs to include a portion of the Entrance Fee as a deduction. This is simply not the case. Section 213(a) of the Internal Revenue Code allows a deduction for expenses incurred for medical care by a taxpayer, taxpayer's spouse and dependents. 28 U.S.C. § 213(a). Medical care is defined as amounts paid for the "diagnosis, cure, mitigation, treatment or prevention of disease . . . ." 26 U.S.C. § 213(d). Revenue Rulings 75-302 1975-2 C.B. 86 and

4

76-481, 1976-2 C.B. 82 have each stated that a portion of a lump-sum life care payment that is allocable to medical care and paid pursuant to a contract is deductible as a medical expense.

Revenue Rulings clearly establish that a portion of the Entrance Fee paid to Classic Residence is tax-deductible as a medical expense. *See* Rev. Rul. 75-302 1975-2 C.B. 86; Rev. Rul. 76-481, 1976-2 C.B. 82. For example, in Revenue Ruling 75-302, 1975-2 C.B. 86, a taxpayer paid a lump sum to a retirement home for lifetime care. Rev. Rul. 75-302 1975-2 C.B. 86. The IRS held that the medical portion of the payment was deductible in the year in which it was paid. *Id.* The IRS reiterated this position in Revenue Ruling 76-481, 1976-2 C.B. 82, holding that the medical portion of a lump sum "founder's fee" paid to a retirement home as consideration for lifetime care was deductible in the year in which the fee was paid. Rev. Rul. 76-481, 1976-2 C.B. 82.

Current tax law supports awarding the Plaintiffs the deduction they requested in their 2002 Form 1040X amended tax return. Just as the taxpayers in Revenue Rulings 75-302, 1975-2 C.B. 86 and 76-481, 1976-2 C.B. 82 paid lump-sum fees to a retirement community for lifetime care, so too did the Plaintiffs when they paid Classic Residence the Entrance Fee in July of 2002. The Court, therefore, should award the Plaintiffs their amended 2002 tax deduction.

Secondly, the Defendant contends that no portion of the Entrance Fee was allocated to provide for medical services. Again, however, this is simply not true. Classic Residence uses a portion of the Entrance Fee to provide for the

5

increasing medical needs of its residents without raising their monthly fees. *See* May 4, 2007 Dep. of Cary Maslow, pp. 40-41.

Moreover, CCRC statements and the language of agreements have served as sufficient evidence of a CCRC medical deduction in the past. *See* Rev. Rul. 75-302, 1975-2 C.B. 86. For example, in Revenue Ruling 75-302, 1975-2 C.B. 86, the IRS granted a taxpayer's medical deduction based on an allocation made by the taxpayer's retirement home and the language within an agreement between the taxpayer and the retirement home. *Id.* In this case, the Plaintiffs have presented two letters from Cary Maslow, the Executive Director of Classic Residence, and each states that a portion of the Plaintiffs' Entrance Fee may be tax-deductible as a medical expense. *See* Exhibit 10; Exhibit 14. The Agreement also establishes that the Entrance Fee provides for residents' medical services, in that Section III of the Agreement specifically states that the services listed in the Agreement are contingent upon payment of the Entrance Fee. *See* Exhibit 3, pp 5-6. The Plaintiffs, therefore, are entitled to the deduction listed in their 1040X amended tax return.

Thirdly, although the Defendant argues otherwise, the Court should not deny the Plaintiffs' deduction merely because the Plaintiffs did not actually receive medical care from Classic Residence in 2002. Current tax law does not require the Plaintiffs to have received medical care from Classic Residence in 2002 to file for a medical deduction for the Entrance Fee in their 2002 tax return. *See* Rev. Rul. 75-302, 1975-2 C.B. 86. For instance, in Revenue Ruling 75-302, 1975-2 C.B. 86, the IRS awarded a taxpayer a medical deduction for a portion of

his lump-sum payment to a life-care facility, noting that "the payment was made in order to secure medical services despite the fact that the medical services were not to be performed until a future time if at all." *Id.* Similarly, in Revenue Ruling 75-303, 1975-2 C.B. 87, the IRS allowed a tax deduction for an advance payment to a lifetime care facility "despite the fact that the medical services are not to be performed until a future time if at all." Rev. Rul. 75-303, 1975-2 C.B. 87. Clearly, then, the issue of whether the Plaintiffs received medical care from Classic Residence in 2002 has no bearing on the validity of their amended 2002 tax deduction.

The Defendant nonetheless contends that the Plaintiffs are not entitled to their medical cost deduction because Revenue Ruling 93-72, 1993-2 C.B. 77 states that Revenue Rulings should not "allow a current deduction of payments for future medical care . . . extending substantially beyond the close of the taxable year in situations where the future care is not purchased in connection with obtaining lifetime care of the type described in those rulings." Rev. Rul. 93-72, 1993-2 C.B. 77. However, the Plaintiffs in this case obtained precisely the type of lifetime care provided to the taxpayer in Revenue Ruling 75-302, 1975-2 C.B. 86. Again, Section IV of the Agreement specifically lists medical services provided to residents of Classic Residence, including assisted living, memory support and skilled nursing services. *See* Exhibit 3, pp. 8-9. The Plaintiffs are therefore entitled to their medical cost deduction regardless of whether they received any medical care from Classic Residence in 2002, the year they filed their Form 1040X amended tax return.

In addition, despite the Defendant's contentions to the contrary, the fact that the Plaintiffs' Entrance Fee may be partially refundable does not preclude its characterization as a medical expense. *See* Rev. Rul. 75-302, 1975-2 C.B. 86. For example, in Revenue Ruling 75-302, 1975-2 C.B. 86, the IRS awarded a taxpayer his medical expense deduction in spite of the fact that the agreement between the taxpayer and his retirement home "provided that in the event a member terminated his membership he would, under certain circumstances, be entitled to a refund of a portion of the life-care fee paid." *Id.* Therefore, under current tax law, the Plaintiffs are entitled to their 2002 medical cost deduction regardless of whether the Entrance Fee may be partially refundable. Although the Plaintiffs would have to declare the Entrance Fee refund as income if and when they received it, they are nonetheless entitled to classify the entrance fee as a medical expense.

Finally, the fact that a portion of the Entrance Fee might be used by Classic Residence to pay for a future shortfall in the Finzer's monthly payments does not preclude the Entrance Fee's characterization as a medical expense. Such payments, just like a refund, would have future tax implications, but they would not prevent the Plaintiffs from receiving their refund. The possibility that the Entrance Fee may be used to cover payment shortfalls is analytically the same as the possibility of a partial refund. Because tax law allows the Plaintiffs to characterize the Entrance Fee as a medical expense even though it is partially refundable, the Plaintiffs can also characterize the Entrance Fee as a medical

expense regardless of whether the Entrance Fee might cover future payment shortfalls.

## THE ACTUARIAL METHOD FOR DETERMINING THE TAX-DEDUCTIBLE PERCENTAGE OF THE ENTRANCE FEE IS ACCEPTABLE

Although the Defendant contends that Classic Residence offered no justification for shifting from the percentage method to an actuarial method, no justification for the shift is necessary, and the shift is perfectly acceptable under current tax law. The IRS has not established that the percentage method is the only acceptable method for determining tax deductions for medical expenses. *See Baker v. Commissioner of Internal Revenue Service,* 122 T.C. 8 (2004). Therefore, Classic Residence was free to shift from the percentage method to the actuarial method, and the Plaintiffs were free to amend their 2002 tax return to reflect that shift.

In fact, as recently as 2004 the IRS has argued in favor of requiring taxpayers to use the actuarial method rather than the percentage method. *Id.* For example, in the case of *Delbert L. and Margaret J. Baker v. Commissioner of Internal Revenue Service*, Delbert Baker and his wife entered into an agreement with a California retirement community center entitling them to lifetime residences and services ranging from independent living to skilled nursing care. *Id.* at 4-5. The Bakers deducted a percentage of their costs as medical expenses. *Id.* at 26-27. After an audit, the IRS disallowed a portion of the Bakers' medical deduction, claiming that the allowable medical deduction had to be based on actuarial

9

calculations taking into consideration health care utilization and longevity.  *Id.* at 27-29.

Although the Tax Court ultimately approved the Bakers' use of the percentage method, it did not state that the actuarial method requested by the IRS was unacceptable.  As the Tax Court stated in its official Tax Court syllabus, "Plaintiffs are not required to use the actuarial method and **may** use the percentage method to determine the portions of the monthly service fees that are allocable to medical care."  *Id.* at 2 (emphasis added).  Therefore, the Plaintiffs were free to use either the percentage method or the actuarial method to determine tax deductions associated with the Entrance Fee, and they were not required to offer any justification for using one method rather the other.

**CONCLUSION**

The facts of this case and the applicable law all lead to the conclusion that the Plaintiffs are entitled to the full tax deduction associated with the Entrance Fee paid to Classic Residence and requested in the Plaintiffs' 2002 Form 1040X amended tax return.  Since the Defendant has not paid the Plaintiffs the full amount of their 2002 tax refund, the Plaintiffs request that this Court order the Defendant to pay the Plaintiffs the sum of Forty Three Thousand One Hundred Seventy Eight and NO/100 ($43,178.00) Dollars, which represents an overpayment of the Plaintiffs' 2002 income taxes, along with the applicable interest as provided by law.

Submitted by:

John O. Finzer, Jr. and Elizabeth M. Finzer


By: /s/_____
         One of their Attorneys


Philip L. Mandell
Pitler and Mandell
39 South LaSalle Street
Suite 1220
Chicago, Illinois 60606
(312)782-9466


The undersigned certifies that he caused this document to be filed through the electronic filing system which will automatically serve the opposing counsel with this document.

By: /s/_____
         Philip L. Mandell