IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN O. FINZER, JR. and ELIZABETH M. FINZER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 06 C 2176 |
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

John and Elizabeth Finzer bring this action to obtain a refund that the Internal Revenue Service (IRS) disallowed for amounts they claimed as medical expenses on their amended 2002 federal income tax return. The Court held a bench trial on July 16, 2007. This constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

In 2002, John and Elizabeth Finzer entered into a residency agreement with CC-Lake, Inc., which owns and operates Classic Residence by Hyatt at the Glen, a lifetime care facility located in Glenview, Illinois (collectively, Hyatt). Classic Residence is a continuing care community licensed under the Illinois Life Care Facilities Act (210 ILCS 40/1-12) that provides life care services to individuals aged sixty-two years and older. Under the agreement, the Finzers receive residential accommodations, meals, upscale amenities, and assisted living and skilled nursing services if needed. The agreement will remain in effect for the rest of their lives

unless terminated by the Finzers upon sixty days notice, or by Hyatt for one of the causes enumerated in the agreement.

The agreement requires all residents to pay an entrance fee, which varies based upon the living unit selected by the resident. The Finzers selected a 2,021 square foot, two-bedroom, two-and-a-half bath villa that required an entrance fee of $723,800. Other models required a significantly smaller entrance fee. For example, at the time the Finzers selected their unit, an 834 square foot, one-bedroom, one-bath apartment for two occupants required a fee of $275,000, a 936 square foot, one-bedroom, one-and-a-half bath apartment required a fee of $322,300, and an 1184 square foot, two-bedroom, two-bath apartment required a fee of $395,500. It is undisputed that all residents receive the same access to assisted living and nursing care regardless of the size of their residential unit or the entrance fee they pay.

The residency agreement provides that when the agreement is terminated for any reason, including the death of the resident, the resident (or his estate) is entitled to a refund equal to the greater of 90% of the entrance fee, or the entrance fee less a fee of 2% for each month the resident was at Classic Residence. In other words, if a resident dies or terminates the agreement after being at Classic Residence for only one month, he or his estate will be entitled to a refund of 98% of the entrance fee. After a resident has been at Classic Residence for five months, he is entitled to a refund of 90% of the entrance fee. Hyatt places no conditions on a resident's entitlement to a refund, other than that Hyatt has one hundred twenty days after termination to give a former resident (or his estate) the money. The Finzers' agreement includes as an appendix a promissory note made by Hyatt in favor of the Finzers for the full amount of the entrance fee. The note states that the entrance fee "is intended to be a loan." Gov't Ex. 3 at

CR791. It further states that upon termination of the residency agreement, Hyatt will repay the entrance fee, less a charge of 2% of the entrance fee for each month of occupancy up to a maximum charge of 10%. The note does not bear interest except in the case of Hyatt's default. Hyatt's chief financial officer, Gary Smith, testified that the entrance fee is intended to be a loan.

The residency agreement also requires the Finzers to make monthly payments for as long as they live at Classic Residence. The monthly payment, currently $4,665, may be increased or decreased by Hyatt upon sixty days written notice. The Finzers' agreement states that all costs of operating Classic Residence, including the cost of assisted living and skilled nursing care, are intended to be paid from the monthly fees, not including the proceeds of the residents' entrance fees. Smith testified that the agreement accurately states how Classic Residence's operating costs are paid. He also testified that Hyatt does not make a profit from the monthly fees but hopes to make a profit from the entrance fees.

In February 2003, Hyatt sent the Finzers a letter regarding the potential tax deductibility of their entrance fee. Hyatt stated that 18.9% of the entrance fee may qualify for deduction as a medical expense. The Finzers thereafter filed their 2002 tax return, claiming $146,339 in medical expenses, of which $136,798 relate to the entrance fee (calculated based on the 18.9% figure). Pursuant to the Internal Revenue Code, medical deductions are capped at 7.5% of a taxpayer's adjusted gross income. Accordingly, the Finzers claimed a medical deduction of $92,420. The IRS did not review or audit the Finzers' 2002 return, and the three-year statute of limitations for challenging the return civilly has now passed.

Sometime after the Finzers filed their 2002 return, Hyatt sent them another letter

regarding the potential deductibility of their entrance fee. Hyatt told the Finzers that for the 2003 tax year, it calculated the percentage of the monthly fees and entrance fees related to medical costs based on actuarial information and statistics. In previous years (including 2002), it had based the calculations on historical operating costs. Hyatt stated that if it had used the 2003 actuarial methodology in 2002, 41% of the entrance fee could have been claimed as a medical deduction instead of 18.9%. Hyatt based the 41% figure on an analysis completed by its outside consultants, Milliman USA. Hyatt retained Milliman to calculate Hyatt's obligation to provide future services to Classic Residence residents. Hyatt's chief financial officer testified that Hyatt did not take into account depreciation, selling, administrative and general expenses in determining that 41% of the entrance fees are attributable to medical expenses. Hyatt's letter to the Finzers providing the 41% figure stated that they should contact their tax advisor and that Hyatt was taking no position on potential tax deductibility.

The Finzers' accountant, Marshall Weller, testified that he relied on the 41% figure in the letter from Hyatt to prepare an amended 2002 return for the Finzers. He testified that he simply relied on the letter from Hyatt and did no separate analysis or research but nonetheless believed that it was appropriate to use Hyatt's 41% figure. (Weller did not explain this, and the Finzers offered no evidence to explain why Weller appropriately could rely on Hyatt's letter given its hedging regarding deductibility.) Using the 41% figure, the Finzers' submitted an amended return showing a $159,960 increase in their total itemized deductions. They therefore sought a $43,178 refund, which the IRS denied.

In a tax refund case, the taxpayer bears the burden of proving that the IRS's assessment of taxes was erroneous and of showing the correct amount he is entitled to recover. *See United*

*States v. Janis*, 428 U.S. 433, 440 (1976). To prevail, therefore, the Finzers must prove by a preponderance of the evidence that they are entitled to a medical expense deduction in excess of the $136,798 deduction they received on their original 2002 return. To do so, they must show that the 41% medical expense ratio Hyatt provided them was proper.

There are several reasons why the Finzers have not met their burden. First and foremost, the testimony was undisputed that residents at Classic Residence pay different entrance fees based on the size of the residential unit they select. Though the Finzers paid $723,800, they would have received the same access to medical care had they selected a smaller unit that required an entrance fee of only $275,000. The Finzers presented no evidence to support a finding that any part of their entrance fee over $275,000 can be properly attributable to medical care. Indeed, their attorney conceded in response to a question by the Court that "this is a difficult question at best." The evidence shows beyond any doubt that the portion of the entrance fee over $275,000 relates solely to the quality of the housing unit selected and has no relation to the Finzers' medical costs. Assuming for purposes of discussion that 41% of $275,000 properly could be deducted as a medical expense, the Finzers would be entitled to a deduction of $112,750, which is less than the $136,798 the Finzers claimed as a deduction on their original 2002 return.

Even if the entrance fees did not vary based on the size of the residential units, the Finzers still would be unable to prevail, because they have not met their burden of showing that 41% of *any* entrance fee is properly attributable to medical expenses. The unrebutted testimony of Hyatt's executives shows that the monthly fees are what Hyatt uses to pay for all medical expenses incurred by residents. Moreover, the residency agreement states that the proceeds of

5

the entrance fees are not used to provide services to the residents. Gov't Ex. 3 at § III.B(1). Gary Smith testified that the entrance fees collected from the first occupants at Classic Residence were used to repay the construction loan for the facility and that the remainder of the entrance fee proceeds were distributable to Hyatt's owners. There is no evidence that any portion of the Finzers' entrance fee was used to pay medical expenses.

Even if some portion of the entrance fees is properly deductible as a medical expense, the Finzers have not carried their burden of proving that 41% is an appropriate percentage. To the contrary, the unrefuted evidence shows that Hyatt arrived at that figure without taking into account significant components of its cost structure. Gary Smith testified that Hyatt did not take into account depreciation, the cost of acquiring new residency contracts, sales, general, or administrative expenses. Without the inclusion of these costs, Hyatt (and, therefore, the Finzers), cannot justify their position that 41% of the entrance fee is attributable to medical costs. The Finzers' argument that their accountant was entitled to simply rely on the information provided by Hyatt is not enough to carry the day.

The government also contends that 90% of the entrance fee cannot be deducted as a medical expense because it was a loan from the Finzers to Hyatt. They point out that, under the tax law, issuance or receipt of a loan is not a taxable event. *See Comm's v. Tufts*, 461 U.S. 300, 307 (1983) ("When a taxpayer receives a loan, he incurs an obligation to repay that loan at some future date. Because of this obligation, the loan proceeds do not qualify as income to the taxpayer. When he fulfills the obligation, the repayment of the loan likewise has no effect on his tax liability."). The Finzers cite *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481 (1937), as support for their position that the Court must look at the substance of the transaction to determine

6

whether the entrance fee was a loan. Their argument, however, merely begs the question. Examination of the substance of the transaction in this case reveals that the entrance fee was structured as a loan. The Finzers ignore the fact that the entrance agreement includes a promissory note issued for their benefit that specifically describes the entrance fee as a loan. Moreover, Hyatt always ends up returning 90% of the entrance fee to its residents. That *is* a loan. *See* Black's Law Dictionary 947 (7th ed. 1999) (a loan is "a grant of something for temporary use"). The Finzers have not cited any authority to support their argument that the fact that the note does not bear interest means that the entrance fee is not a loan.[1] Nor have they cited any law to support their argument that the fact that the promissory note is not callable on a date certain means that the entrance fee is not a loan. The entrance fee loan is callable whenever the agreement is terminated for any reason, including the death of the residents. Though the Court does not discredit John Finzer's testimony that he did not think the entrance fee was a loan, the fact remains that there really is no other way properly to characterize it. And because the entrance fee is a loan, it cannot serve as the basis for a deduction for the Finzers. *Tufts*, 461 U.S. at 307.

The Finzers argue, as they did in their successful opposition to the government's motion for summary judgment, that prior IRS rulings address situations similar to the one at issue in this case and support the deductibility of a portion of a fee similar to the one the Finzers paid. In 1975, the IRS ruled that a taxpayer who paid a lump-sum life-care fee to a retirement home may deduct as a medical expense that portion of the fee allocable to the retirement home's obligation

---

[1] The tax law recognizes the concept of interest free loans. *See* 26 U.S.C. § 7872 (addressing treatment of below-market interest rates and gift loans).

to provide medical care. Rev. Rul. 75-302, 1975-2 C.B. 86. The IRS made a similar ruling the following year. *See* Rev. Rul. 76-481, 1976-2 C.B. 82. In ruling on the government's motion for summary judgment, the Court agreed with the Finzers. At that time, however, the Court (and the parties) did not have the benefit of the documents and testimony later received from Hyatt.

In the 1975 ruling, no portion of the lump-sum payment was refundable. It clearly was not a loan. Moreover, in that ruling there was no dispute that the lump-sum payment was for medical care. The same, of course, it not true in this case.

The 1976 ruling states that the portion of a lump sum payment paid in connection with life-care residence at a retirement home is deductible to the extent it "is properly allocable to medical care." *Id.* The ruling states that 10% of the payment was made to secure medical services. Here, as explained above, the Finzers have not shown that the portion of the entrance fee that they sought to deduct in their amended return is properly attributable to their medical care. In addition, a portion of the lump-sum fee in the 1976 ruling was refundable "under certain circumstances . . . in accordance with a specified formula that included a penalty provision." *Id.*

In its ruling denying the government's motion for summary judgment, the Court noted that the mere fact that a portion of the entrance fee is refundable does not necessarily mean that it is not deductible as a medical expense. The Court wrote,

> The lifetime care agreement at issue in the [1976 revenue ruling] also provided that a portion of the fee could be refunded in certain circumstances. In holding that a portion of the fee could be deducted as a medical expense, the IRS found that any refund of the fee attributable to a prior year deduction would have to be included in the taxpayer's gross income in the year the refund was received. Based on this ruling, the fact that the Finzers may be eligible for a refund would not appear to affect whether a portion of the entrance fee is deductible in the 2002 tax year; rather, it indicates that they would have to declare the refund as income

if and when they receive it.

*Finzer v. United States*, No. 06 C 2176, 2007 WL 781731 (N.D. Ill. March 7, 2007). What the Court did not know at that time was that the Finzers *are* entitled to a refund because the entrance fee was a loan. This distinguishes their case from the 1976 revenue ruling in which the taxpayer *may* have been entitled to a partial refund "under certain circumstances."

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment in favor of the United States.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 20, 2007